IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RICHARD DEAN LIGHT, ) | CIVIL ACTION 4:11-cv-2514-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**PROCEDURAL HISTORY**

Richard Dean Light ("Plaintiff" or "Claimant") filed applications for DIB and SSI on July 16, 2007, alleging inability to work since October 9, 2006.[1] His applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A video

---

[1] Plaintiff later amended his onset date to January 2007.

hearing was held on June 11, 2010, before an Administrative Law Judge ("ALJ"). Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on July 27, 2010, finding Plaintiff was not disabled within the meaning of the Act. (Tr.11-21). In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since January 4, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971, *et seq.*).

3.  The claimant has the following severe impairments: cervical disc bulge and stenosis; peripheral neuropathy; and degenerative joint disease of the knees (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a significant range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can lift or carry ten pounds occasionally, and lighter objects frequently. He can walk or stand up to two hours in an eight-hour day, but only for 30 minutes at a time. He can sit for up to six hours in an eight-hour workday with an at-will sit/stand option. He can occasionally push and pull with the lower extremities. He can occasionally stair climb, stoop and crouch. He cannot kneel, crawl, climb ladders or scaffolds, balance, and work at heights or with hazardous machinery. He must not perform repetitive head movements.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on October 12, 1960 and was 46 years old, which is defined as a younger individual age 45-49, on the amended alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969a) and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

On August 18, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). After the Appeals Council denied his request for review, Plaintiff filed his complaint in this action on September 19, 2011.

## ANALYSIS

Plaintiff alleges disability due to peripheral neuropathy and knee disorders. Plaintiff was 49 years of age at the time of the hearing and has a twelfth grade education. Plaintiff has past relevant work as a scale clerk.  In his brief, Plaintiff argues the ALJ erred by failing to properly evaluate Plaintiff's subjective symptoms and by improperly rejecting the opinion of Plaintiff's treating physician, Dr. Dunbar, that he is disabled. (Plaintiff's brief). The Commissioner contends that the ALJ did not commit these errors and that substantial evidence supports the determination that Plaintiff was not disabled.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported

by substantial evidence and if proper legal standards were applied.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## ARGUMENTS AND ANALYSIS

### Treating physician's opinion

Plaintiff argues the ALJ erred in rejecting the opinions of Dr. Dunbar, Plaintiff's treating physician. Plaintiff asserts that Dr. Dunbar submitted statements dated November 18, 2008, and March 11, 2010. Plaintiff contends that "[t]he ALJ is technically accurate in stating that Dr. Dunbar's limitations in these reports, made sixteen months apart, are not 'consistent' but the discrepancies are trivial; in the first he states that Plaintiff can work a total of two hours a day and stand 15 minutes at a time; in the second, that Plaintiff cannot work even one hour a day and can stand 30 minutes. (Tr. 638)." (Plaintiff's brief, p. 15). However, Plaintiff argues that in both reports, Dr. Dunbar estimated Plaintiff's level of pain to be severe and imposed identical limitations for sitting for no more than 30 minutes, frequent lifting of five pounds, occasional lifting of ten pounds, and only occasional bending. Plaintiff argues that "both reports express limitations which are inconsistent with the performance of sedentary work on a sustained basis." (Id.). Plaintiff contends that the ALJ's rejection

5

of Dr. Dunbar's opinions on the grounds that they are unsupported by office notes and not based on objective testing is error.

Defendant argues that the ALJ expressly noted the reasons he was not giving Dr. Dunbar's opinions great weight. Defendant asserts the ALJ expressly noted that Dr. Dunbars opinions were not supported by his contemporaneous treatment notes and the notes of his associates. Defendant argues there is substantial evidence to support the ALJ's decision in this regard.

The Social Security Regulations distinguish between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06–03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06–03p. However, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06–03p. Social Security Ruling 06–03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

In the Order, the ALJ thoroughly discussed the reports from the medical doctors and facilities and what weight he was according them. The ALJ found the following with regard to the objective medical evidence:

> In terms of the claimant's alleged impairments, the objective evidence reveals that the claimant has sought care from primary care providers and a medical specialist for his knee and neck pain since the amended alleged onset date. On January 4, 2007, an MRI of the cervical spine identified a mild disc bulge at C3-4, a moderate disc bulge at C5-6, and a marked diffuse degenerative disc bulge at C6-7 with relative spinal canal stenosis. During this same month a nerve conduction study identified probable early peripheral neuropathy. The claimant's neurologist, Frank O. Busey [sic], Jr., M.D., advised the claimant to maintain tight control of his diet and to stop drinking alcohol completely.
>
> The claimant testified that he did not stop drinking until August 2008, or more than a year after these diagnostic tests were performed. The claimant's failure to follow up on recommendations made by a treating physician suggests that the symptoms may not have been serious as he alleged in his application and appeal to the Administration.
>
> The undersigned finds limitations in the residual functional capacity for lower extremity pushing and pulling but not upper extremity pushing and pulling, because the claimant testified that his cervical disc disease did not radiate to his arms.
>
> Vasant L. Garde, M.D., examined the claimant during a first consultative examination on November 7, 2007. ....the claimant was primarily focused on his knee pain during the examination. He could squat and get on and off the examination table without difficulty. He could perform fine and gross movements without difficulty. X-rays taken in support of the examination confirmed cervical disc disease.
>
> . . .
>
> In April 2009, MRIs identified moderate joint effusion and meniscal tears at both knees (Exhibit 23F, pp. 10-13). An August 17, 2009 x-ray identified mild medial compartment joint space narrowing and effusions (Exhibit 27F, p. 5). The claimant had arthroscopic surgery on the right knee in September 2009 and was prescribed four weeks of physical therapy. (Exhibits 23F, p. 21; 24F, p. 44). There was no reported improvement of symptoms following the surgery. Recent medical evidence from May 2010 documents the administration of a steroid injection at the left knee and a prescription for Mobic. Conservative measures to include activity modification, weight loss, the use of anti-inflammatory medications, bracing, and

> steroid treatment were discussed with the claimant during this May 2010 office visit (Exhibit 27F, p. 18).
>
> In summary, there is evidence of both the neck and knee impairment. However, the objective evidence, which is quite extensive, does not support the limitations to which the claimant testified. The undersigned finds that the claimant would be limited to sedentary work due to his inability to walk more than a total of two hours. Moreover, the claimant is given postural limitations consistent with his knee impairment. Finally, his limitation for repetitive head movement addresses his cervical disc disease.

(Tr. 18).

The ALJ set out the objective medial evidence and based the RFC on said evidence. The ALJ discussed the medical evidence and the testimony of the Plaintiff. With regard to Dr. Dunbar's medical opinion in the two one-page forms he completed, the ALJ concluded as follows:

> The record contains medical source statements from the claimant's primary care physician, C. P. Dunbar, M.D., dated November 18, 2008 and March 11, 2010 (Exhibits 20F, 26F). The reports in these statements are not consistent with each other, nor are they supported by the evidence from Dr. Dunbar's office treatment records. Specifically, early notes in Exhibit 21F of the evidence folder show normal range of motion of the lower extremities, normal gait, and normal ability to stand without difficulty, but his later notes show evidence of pain and crepitus. Nevertheless, Dr. Dunbar has only managed the claimant's impairments with prescription pain medication. Dr. Dunbar does not base his opinion on any objective testing.[2]

(Tr. 18-19).

Based on a review of Dr. Dunbar's office notes, there is substantial evidence to support the ALJ's decision with regard to the weight he afforded Dr. Dunbar's opinions. See medical records, Tr. 486-527. Additionally, the ALJ stated in his order that he was giving little weight to the opinion of the non-examining State medical Consultant James Weston, M.D., that the Plaintiff could perform

---

[2] It is noted that in the form completed by Dr. Dunbar on March 11, 2010, he stated under the comments section that "[m]ust review MRI for results not described above." (Tr. 638).

light work finding that Dr. Weston did not give adequate consideration to the Plaintiff's subjective complaints. The ALJ found that the objective medical evidence supports that Plaintiff has degenerative disc disease and peripheral neuropathy that impose some limitations for ambulation, and that he has cervical disease that imposes some range of motion limitations for neck movement. The RFC found by the ALJ limited the Plaintiff to sedentary work with the ability to stand or walk up to two hours in an eight-hour day, but only 30 minutes at a time; the ability to sit for up to six hours in an eight-hour workday, with an at-will sit/stand option, can occasionally push and pull with the lower extremities; can occasionally stair climb, stoop and crouch; cannot kneel, crawl, climb ladders or scaffolds, balance and work at heights or with hazardous machinery; and, must not perform repetitive head movements. The ALJ's assessment shows that he evaluated the opinions and treatment notes of the medical experts and the objective medical evidence resolving any conflicts in the evidence to conclude that Plaintiff has the ability to perform sedentary work with the limitations as set out in the RFC. Thus, there is substantial evidence to support the ALJ's decision with regard to the treating physician's opinion.

**Credibility**

Plaintiff contends that the ALJ erred in his credibility assessment of Plaintiff's testimony regarding the severity of his symptoms. Plaintiff argues that the ALJ's credibility analysis "consists of an incomplete recitation of Plaintiff's testimony, a confusing paragraph tying the credibility of Plaintiff's subjective symptoms to his continuing alcoholism until August 2008 (tr. 17, ¶ 7) and an inaccurate summary of the objective clinical and laboratory findings in the medical evidence. . ." (Plaintiff's brief, p. 11). Plaintiff argues that although the ALJ acknowledged Plaintiff had alleged

side effects from his medications such as fatigue and weakness, the ALJ failed to evaluate the allegations and made no reference to them in her credibility analysis. Plaintiff further argues that the ALJ held Plaintiff's alcoholism against him. Plaintiff also asserts that the ALJ's summary of the objective medical evidence is incorrect in that while she discussed the abnormal MRIs of the knees, she made no reference to the "persistent clinical abnormalities in the knees by Dr. Dunbar, Dr. Koon, physicians at the Free Clinic, and Palmetto Richland ER physicians which included persistent edema, crepitation limited range of motion, and muscle weakness despite narcotics, frequent injections and eventual knee surgery." (Plaintiff's brief, p. 13).

Defendant responds that the ALJ expressly noted Plaintiff's alcohol use and related injuries, noting that testing revealed peripheral neuropathy which was possibly related to alcohol abuse.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that he alleged and, accordingly, proceeded to step two. It is here that Plaintiff has an issue.

The ALJ set out a summary of Plaintiff's medical records and testimony at the hearing and concluded that his allegations that he is unable to perform all work activity not credible. The ALJ found as follows:

> The claimant alleges that he cannot work because of a combination of severe impairments. He has numerous medical conditions, but he testified that his main work-related limitations are imposed by neck and knee pain. He described his pain as occurring daily and at times becoming unbearable. The claimant stated that he could stand for only five minutes at a time and walk even less. He stated that he uses a cane and sometimes a walker to ambulate.
>
> The claimant testified that turning his head from side to side is painful, but he is not entirely restricted in doing so by pain, he can move his head up and down with minimal difficulty and minimal pain, he stated that he could sit in an office-type chair, but would need to stretch out every 10 to 15 minutes for a"minute or so." He takes pain medication, but is limited in doing so due to acid reflux. He stated that his side effects from medications include fatigue and weakness.
>
> The claimant testified that he stopped working as a weighmaster in a sawmill when his plant closed. He stated that he began having problems with his knees before the plant closed and that his knee problems affected his work, but apparently did not preclude it. The claimant stated that by 2005 he was "close to needing to do something" with his knees, and that he was putting off surgery until it is absolutely necessary because of his age.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> . . .
>
> The claimant testified that he did not stop drinking until August 2008, or more than a year after these diagnostic tests were performed. The claimant's failure to follow up on recommendations made by a treating physician suggests that the symptoms may not have been serious as he alleged in his application and appeal to the Administration.
>
> The undersigned finds limitations in the residual functional capacity for lower extremity pushing and pulling, but not upper extremity pushing and pulling, because the claimant testified that his cervical disc disease did not radiate to his arms.

(Tr. 17-18).

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The undersigned concludes the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support her finding that Plaintiff's subjective complaints were not entirely credible. Substantial evidence supports the ALJ's determination that the Plaintiff's testimony was not fully credible. The fact that the Plaintiff can point to some other evidence in the record that supports his alleged inability to work does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990). It is not the responsibility of the Court to determine the weight of the evidence. Id. Here, the ALJ's decision is supported by substantial evidence.

## **CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. <u>Richardson</u>, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. <u>Blalock,</u> 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

<u>s/Thomas E. Rogers, III</u><br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

March <u>4</u>, 2013
Florence, South Carolina